IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| USIC LOCATING SERVICES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ONE CALL LOCATORS, LTD, d/b/a ELM LOCATING & UTILITY SERVICES and LEE C. GRAVES, <br><br> Defendants. | Case No: 1:11-CV-0071-SEB-DKL |

**DEFENDANTS ONE CALL LOCATORS, LTD. d/b/a ELM LOCATING & UTILITY SERVICES' AND LEE C. GRAVES' FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, DEMAND FOR JURY TRIAL; AND COUNTERCLAIM FOR DECLARATORY JUDGMENT AND DAMAGES**

For their First Amended Answer to Plaintiff's Complaint for Damages filed January 14, 2011, Defendants One Call Locators, Ltd. d/b/a ELM Locating & Utility Services ("One Call") and Lee C. Graves ("Graves") collectively "Defendants", by counsel, admit, deny and allege as follows:

**PARTIES AND JURISDICTION**

1.  Defendants are without knowledge as to the truth of the allegations set forth in Paragraph 1, and on that basis deny the allegations thereof.

2.  Defendants admit the allegations set forth in Paragraph 2.

3.  Defendants admit the allegations set forth in Paragraph 3.

4.  Defendants admit the allegations set forth in Paragraph 4.

5.  Defendants admit the allegations set forth in Paragraph 5.

6.  Defendants admit the allegations set forth in Paragraph 6.

## ALLEGATIONS COMMON TO ALL COUNTS

### The APA

7. Defendants repeat and incorporate by reference Paragraphs 1-6 above.

8. Defendants admit the allegations set forth in Paragraph 8.

9. Defendants admit the allegations set forth in Paragraph 9.

10. Defendants admit Graves is a party to the Original APA and deny the remainder of allegations in Paragraph 10.

11. Defendants admit the allegations set forth in Paragraph 11.

12. Defendants admit the transaction under the APA closed on September 30, 2010 ("Closing") and that USIC now owns ELM's assets as described in the APA and deny the remainder of allegations in Paragraph 12.

### The Accounts Receivables

13. As pertains to Paragraph 13, Defendants admit Section 1.01 of the Original APA exists and that it speaks for itself.

14. Defendants admit that Accounts Receivables were received by ELM and deny the remainder of the allegations set forth in Paragraph 14.

15. Defendants deny each and every allegation set forth in Paragraph 15.

16. Defendants deny each and every allegation set forth in Paragraph 16.

### The Working Capital True-Up

17. As pertains to Paragraph 17, Defendants admit Section 1.04(c) of the APA exists and that it speaks for itself.

18. Defendants admit the allegations set forth in Paragraph 18.

19. Defendants admit the allegations set forth in Paragraph 19.

20. As pertains to Paragraph 20, Defendants admit Section 1.03 of the Amended APA exists and that it speaks for itself.

21. Defendants deny each and every allegation set forth in Paragraph 21.

### USIC's Demand for Indemnification

22. As pertains to Paragraph 22, Defendants admit Section 7.01 of the APA exists and that it speaks for itself.

23. Defendants admit receiving Exhibit C, which is dated December 30, 2010, and deny the remaining allegations of Paragraph 23.

24. Defendants admit that USIC has demanded payments and deny the remainder of the allegations set forth in Paragraph 24.

25. Defendants deny each and every allegation set forth in Paragraph 25.

26. Defendants deny each and every allegation set forth in Paragraph 26.

### COUNT I: BREACH OF CONTRACT

27. Defendants repeat and incorporate by reference Paragraphs 1-26 above.

28. Defendants admit the allegations set forth in Paragraph 28.

29. Defendants deny each and every allegation set forth in Paragraph 29.

30. Defendants deny each and every allegation set forth in Paragraph 30.

31. Defendants deny each and every allegation set forth in Paragraph 31.

### COUNT II: UNJUST ENRICHMENT

32. Defendants repeat and incorporate by reference Paragraphs 1-31 above.

33. Defendants deny each and every allegation set forth in Paragraph 33.

34. Defendants deny each and every allegation set forth in Paragraph 34.

35. Defendants deny each and every allegation set forth in Paragraph 35.

### COUNT IV: CONVERSION

36. Defendants repeat and incorporate by reference Paragraphs 1-35 above.

37. As pertains to Paragraph 37, Defendants admit USIC became the owner of ELM's Accounts Receivables pursuant to the APA.

38. Defendants deny each and every allegation set forth in Paragraph 38.

39. Defendants deny each and every allegation set forth in Paragraph 39.

40. Defendants admit that USIC has demanded payments and deny the remainder of the

allegations set forth in Paragraph 40.

41. Defendants deny each and every allegation set forth in Paragraph 41.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

(Mutual Mistake)

1. Defendants are informed and believe, and thereon allege, that if there presently exists or ever existed, any or all of the alleged rights, claims or obligations which Plaintiff seeks by way of its Complaint, said claims or obligations are unenforceable by reason of mutual mistake.

### SECOND AFFIRMATIVE DEFENSE

(Failure to Mitigate)

2. Defendants are informed and believe and thereon allege that Plaintiff has failed to mitigate and lessen damages, if any it sustained, as required by law, and is barred from recovery by reason thereof against Defendants.

### THIRD AFFIRMATIVE DEFENSE

(Equitable Estoppel)

3. Defendants allege that the Plaintiff herein, and each and every Cause of Action contained in the Complaint, is barred by reason of acts, omissions, representations and courses of conduct by Plaintiff by which Defendants were led to rely to their detriment, thereby barring, under the doctrine of equitable estoppel, any Causes of Action asserted by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

(Condition Precedent)

4. Defendants allege that performance by Defendants of certain acts were contingent upon receipt of specific instructions or as otherwise properly directed; any actions which supposedly were to be undertaken by these Defendants, and thus Plaintiff's authority, direction and cooperation was a condition precedent to any alleged obligation by these Defendants to perform such acts.

## FIFTH AFFIRMATIVE DEFENSE

(Waiver)

5.      Defendants are informed and believe, and on such information and belief, allege that Plaintiff was engaged in conduct that constitutes a waiver of their rights under the contract alleged in the Complaint.  By reason of said waiver, Defendants are excused from further performance of the obligations under the alleged contract.

## SIXTH AFFIRMATIVE DEFENSE

(Release)

6.      Defendants allege that Plaintiff's action constituted a full release and waiver of any and all claims with Plaintiff's may have against Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

(Set-Off)

7.      To the extent Plaintiff has been compensated for the alleged damages by receiving payment from other persons or entities in sums either anticipated by the contract or otherwise to their benefits (discounts, premiums, incentives, or the like), the amount of any such compensation should be set off against any recovery Plaintiff may receive in this action; separately and distinctly, to the extent that Plaintiff still owes sums due under the contract for their purchase of the assets thereunder, the amount of any such sums due and owing should be set off against any recovery Plaintiff may be otherwise entitled to receive in this action.

## DEFENDANTS' COUNTERCLAIMS

## COUNT I: DECLARATORY JUDGMENT

1.      Defendants hereby incorporate by reference Defendants' January 13, 2010 Illinois Complaint For Declaratory Judgment, which is being consolidated with this cause of action pursuant to the parties' Joint Motion to Consolidate Actions (Document 34), filed August 9, 2011. Said Joint Motion to Consolidate asks the Court to treat the Defendants' Complaint For Declaratory Judgment as a counterclaim to USIC's Complaint in this action.

2. The APA is a valid and enforceable agreement.

3. Defendants have a legal tangible interest, as a party, in the APA. USIC has an opposing interest, as a party, in the APA.

4. An actual controversy exists between the parties concerning their respective interests in the APA.

5. As to the actual controversy, the APA provides for the timing of certain payments between the parties; and there are actual controversies as to the timing of certain payments to be made under the APA.

6. The first actual controversy has to do with USIC's pending demand for a payment of "Working Capital" in the amount of $450,718.00.

7. There is an actual controversy as to whether any amount of "Working Capital" is currently due.

8. Defendants believe no amount of Working Capital is currently due and owed USIC.

9. According to Defendants, there is a contractual provision addressing "Working Capital" and the APA defers any such payment until September 30, 2011. See, Section 1.05 of the Asset Purchase Agreement (APA) which initially provided:

> Section 1.05. Deferred Purchase Price. Purchaser shall pay Seller an amount up to One Million Five Hundred Thousand Dollars ($1,500,000) (the "Deferred Amount") subject to Section 1.06 and the provisions of Article VII, no later than five (5) calendar days following the final determination of the Final Twelve Month Period TTM Revenue in accordance with Section 1.06(b).

10. Section 1.05 was modified in the First Amendment to the APA, (Exhibit 2, hereto), to read as follows:

> Section 1.2. Section 1.05 of the Purchase Agreement is hereby is hereby amended and restated in its entirety as follows:
>
> Purchaser shall pay Seller an amount up to One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) (the "Deferred Amount") subject to Section 1.06 and the provisions of Article VII, no later than five (5) calendar days following the final determination of the Final Twelve Month Period TTM Revenue in accordance with Section 1.06(b).

11. USIC is demanding payment of these monies immediately, as they were due September 30, 2011.

12. Defendants further reference Section 1.03 of the First Amendment to the APA, which states:

> Section 1.3. Section 1.06(vi) of the Purchase Agreement is hereby is hereby amended and restated in its entirety as follows:
>
> In the event that the Final Working Capital is less than the Estimated Working Capital, then Seller shall, within five (5) calendar days after the determination thereof, pay to Purchaser an amount equal to such difference, by wire transfer of immediately available funds to an account designated in writing by Purchaser; provided, however, that if Seller fails to pay such difference, Purchaser may deduct from the Deferred Amount otherwise payable to Seller pursuant to Section 1.05 an amount equal to such difference.

13. There is an actual controversy as to what monies are due Defendants at this time as contemplated by the First Amendment to the APA.

14. The parties differ as to what sums are now due.

15. As to the second actual controversy, which exists between the parties, the APA provides for Accounts Receivables. Section 4.12 of the APA provides:

> Section 4.12. Accounts Receivable. The Accounts Receivable reflected in the Financial Statements, and all Accounts Receivable arising since August 31, 2010, represent or shall represent bona fide claims, arms-length transactions, against debtors for services performed or other charges arising in the Ordinary Course of Business and are not subject to dispute, set-off or counterclaim. All Accounts Receivable shall be collected in full in the Ordinary Course of Business (without the necessity of legal Proceedings) within sixty (60) calendar days after invoicing therefore in accordance with their terms, and at the aggregate recorded amounts thereof.

16. The dispute is whether the Accounts Receivables received by One Call, after the effective date of the APA, are potentially due and payable to USIC or whether they are offset by the amounts now past due to Defendants.

17. Section 1.06 of the APA addresses the process for determining what final amounts are due and payable to either party at the end of the 12-month period. That section addresses the

amounts to be factored in as Working Capital amounts. Moreover, the definition section defines Working Capital as:

> "Working Capital" shall mean current assets (but consisting only of Accounts Receivable, Unbilled Accounts Receivable and Prepaid Items), less current liabilities (but consisting only of Trade Payables and current liabilities related to vehicle and computer leases).

18. Defendants understand that the APA treats these paid in Accounts Receivable as Working Capital, and that they are to be figured into the calculations contemplated for September 30, 2011 and were to be factored into the monies owed ELM.

19. USIC has created an actual controversy by demanding the immediate payment of this Working Capital. There is therefore a second and separate actual controversy between the parties.

20. The third actual controversy between the parties is whether the "attorneys fees" provisions of Section 7.01 and Section 9 .06(c) of the APA are applicable to a dispute as to the timing provided for in Section 1.05 and 1.06 of the APA.

21. USIC has made an assertion and demand for attorney's fees, and Defendants do not believe the attorneys' fees provisions identified are applicable to disputes under Section 1.06. In fact, Section 1.06 provides for the appointment of an Independent Auditor to arbitrate any such disputes at the end of the 12-month period. This is addressed in Section 1.06(b)(iv). ELM had attempted to employ this provision of the APA, but USIC has refused, after promising to provide the relevant documents necessary to undertake a review by an Independent Auditor.

22. At this time, the 12-month accounting between the parties is over. USIC has refused Defendants reasonable access to records to verify the 12 month revenue of the Business ("Business," hereafter referred to as defined by the APA) and USIC's alleged reductions to the deferred purchase price. The deferred purchase price is now past due and immediately payable to Defendants.

23. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Defendants may ascertain their rights under the APA.

24.     The court should determine and declare that Defendants are entitled to be paid the Deferred Amount under the APA, that no monies are due to USIC and that USIC is not entitled to a determination of attorneys' fees.

25.     WHEREFORE, Defendants pray for judgment as set forth below.

## COUNT II: BREACH OF CONTRACT

26.     Defendants reallege and incorporate herein by reference the allegations set forth above.

27.     Since January 13, 2011, the date that Defendant first filed suit in its Illinois Complaint For Declaratory Judgment (joined to this action), USIC has breached at least the following express terms of the written contract between the parties, the APA:

> **Section 1.05:** "Purchaser shall pay Seller an amount up to One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) (the "Deferred Amount") subject to Section 1.06 and the provisions of Article VII, no later than five (5) calendar days following the final determination of the Final Twelve Month Period TTM Revenue…"
>
> **Section 1.06(b)(i)**: "Purchaser shall deliver to Seller its good faith estimate of the Twelve Month Period TTM Revenue (the "Estimated Twelve Month Period TTM Revenue") and a corresponding estimate of the amount, if any, by which the Purchase Price is to be adjusted in accordance with the provisions of this Agreement (such adjustment, if any, the "Revenue Adjustment"). In connection with the foregoing, Purchaser shall provide to Seller any supporting documentation for such estimates and any additional information reasonably requested by Seller with respect thereto."
>
> **Section 1.06(b)(ii):** "Seller and its representatives shall be provided with reasonable access at reasonable times to all financial records and information of related to the Business as they may reasonably request to enable them to respond to the Estimated Twelve Month Period TTM Revenue."
>
> **Section 1.06(b)(iii)**: "During such thirty (30) calendar day period and until final determination of the Estimated Twelve Month Period TTM Revenue in accordance with this Section 1.06(b)(iii), Purchaser and its representatives shall be provided with reasonable access at reasonable times to all financial records and information of Seller related to the Business as they may reasonably request to enable them to respond to the Dispute Notice."
>
> **Section 10.08:** "Within ten (10) Business Days after the end of each month to be

calculated in the Twelve Month Period TTM Revenue, Purchaser shall deliver to Seller a statement setting forth its good faith estimate of the aggregate revenue of the Business for the preceding month (excluding revenue attributable to the Excluded Contracts in Minnesota) as reported in accordance with GAAP consistently applied and calculated in accordance with the definition of the Twelve Month Period TTM Revenue."

**Section 12.04.** "From and after the date of this Agreement, the parties shall cooperate reasonably with each other in connection with any steps required to be taken as part of their respective obligations under this Agreement or any of the Related Agreements and shall: (a) furnish upon request to each other such further information; (b) execute and deliver to each other such other documents; and ( c) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of transactions contemplated by this Agreement and the Related Agreements."

28. USIC has, moreover, breached the implied covenant of good faith and fair dealing that is inherent in every contract pursuant to law, and the express covenant of good faith as set out throughout the APA. See, for example, Section 1.06(b)(iii): "the parties shall work together in good faith to resolve such disagreements."

29. In particular, USIC has failed to pay to Defendants the deferred purchase price of $1,750,00.00 (the "Deferred Amount" as defined in the APA), or said sum as otherwise computed pursuant to the APA's terms.

30. USIC has, additionally, failed to deliver information and provide access to records as set forth in the provisions of the APA, so that the Deferred Amount can be verified. See for example, APA Sections 1.06(b)(i)-(iii), 10.08 and 12.04. Such failure constitutes breach of the express provisions of the APA.

31. USIC has failed to act in good faith throughout the accounting process.

32. Further, USIC has failed to operate the Business in good faith during the 12-month period following the closing of the APA.

33. Additionally, USIC has failed to protect Defendants' interest in the Deferred Amount, concerning which USIC represented that it would protect for the benefit of Defendants.

34.     USIC's breaches have damaged Defendants in the amount of the deferred purchase price and in additional amounts unknown by Defendants at this time.

35.     USIC's failure to operate the Business in good faith has directly damaged Defendants by reducing the amount of 12-month revenue USIC received, thereby allegedly lessening or reducing the value of the Business purchased from Defendants, and thereby allegedly reducing the sum due and payable by USIC to Defendants.

36.     At this time, due to USIC's breaches with regard to the provision of information and documentation pursuant to its contractual obligations, Defendants are unable to validate any of USIC's 12 month revenue estimate; and Defendant's are therefore unable to determine actual amounts owed by USIC to Defendants (i.e., to compute the Revenue Adjustment, as defined in the APA) under the terms of the contract, or other sums otherwise due and payable between the parties.

37.     Defendants have spent considerable time and large expense in efforts to access USIC's records and undertake an accounting, as provided by the terms of the APA. For example, expense includes that Defendants sent a team of four people across state lines to USIC's offices in Indiana in order to access records and validate USIC's 12 month revenue. This trip was planned because USIC refused to exchange information with One Call electronically as the parties had done in all past instances related to the APA. Despite extensive planning and eventual agreement of counsel, requested information was denied. For the two whole days that the Defendants' team was present at USIC, they were repeatedly promised documents, but they were not produced. Defendants' team waited two days in Indiana before making the decision to leave. These are therefore consequential damages sustained by Defendants, as a result of USIC's breaches of the contract as herein alleged.

38.     All conditions precedent to Defendants' causes of action have been performed, have occurred, or have been excused.

39.     As a result of Plaintiff's breach of contract as herein alleged, Defendants have sustained and incurred damages in the amount of the Deferred Sum ($1,750,000 plus interest since

September 30, 2011), plus consequential damages as herein sustained (approximately $30,000), and attorney's fees to be determined by the court under the term of the APA.

40. Defendants therefore allege, and request a determination by this Court or the trier of fact, that there was a written contract between the parties; that USIC has breached the APA; that Defendants are entitled to be paid the Deferred Amount and Defendants' consequential damages as herein alleged, along with attorney's fees pursuant to the terms of the APA; and, that, pursuant to Defendants' Answer, no monies are due to USIC and that USIC, nor is it entitled to attorneys' fees.

41. WHEREFORE, Defendants pray for judgment as set forth below.

## COUNT III: FRAUD

42. Defendants reallege and incorporate herein by reference the allegations set forth above.

43. USIC intentionally induced Defendants to enter into the APA with the intention of breaching the express terms of the APA and the implied covenant of good faith and fair dealing to Defendants' detriment and damage.

44. In negotiating the amount $1,750,00.00 as the Deferred Amount, on or about September 29, 2010, USIC, by and through Michael Quinn (on information and belief located in his office in Carmel, Indiana), represented during a call with Defendants, by and through Lee Graves (located at his office in Peoria, Illinois), that it was in the best interest of all parties for USIC to make best efforts to maintain or increase revenues of the acquired One Call business (defined in the APA as "Business") during the 12 month period following the closing of the APA. USIC falsely represented to Defendants that it would make best efforts to operate the Business during the 12-month period following the closing of the APA.

45. On information and belief, at the time of entering into the APA, USIC intended to, and had already taken acts to, reduce the 12 month revenue of the Business, thereby reducing sums due and payable to Defendants thereunder, and therefore USIC's representations to Defendants were false.

46.     On information and belief, USIC intended to reduce the 12 month revenue of the Business by giving discounts, price reductions and lower contract pricing provisions to customers in association with its operation of the Business, to Defendants' detriment.

47.     Such actions benefitted USIC, in terms of improving customer relations and satisfaction.

48.     There was no economic "downside" to USIC by providing these discounts, and USIC never intended to pay the Deferred Amount to Defendants, as evidenced by the fact that the Deferred Amount is now past due and that USIC has refused to provide the requisite documents that will prove or disprove its fraudulent conduct.

49.     On information and belief, on or before September 29, 2010, USIC made an offer to a customer of the Business to reduce One Call's rates, the effect of which would diminish the 12 month revenue of the Business and which was wrongfully detrimental to Defendants' interests and therefore at the time they were made, Michael Quinn's material representations on behalf of USIC to Defendants were demonstrably false.

50.     Defendants relied on USIC's representations of good faith and fair dealing in making their decision to accept the Deferred Amount of $1,750,00.00 (a condition sprung on ELM virtually a day before the signing of the APA), and to agree to the terms of the APA and to enter into the APA.

51.     USIC's fraudulent acts were intentional and in wonton disregard of Defendants' rights under the APA, including but not limited to upon purchase price of the Business and provisions ensuring Defendants' right to access certain information.

52.     Further evidence of fraudulent conduct includes that during the 12 month period following the closing of the APA, USIC has effectuated multiple discounts and reduced pricing, as well as failed to enforce several contractual price increases affecting customers purchased under the APA. These acts had the overall effect of reducing the 12 month revenue of the Business and damaging Defendants in amounts unknown by Defendants at this time.

53. Further evidence of fraudulent conduct includes that during the 12 month period following the closing of the APA, USIC has re-characterized certain work to lower billings, to the detriment of Defendants by having the overall effect of reducing the 12 month revenue of the Business, and thereby willfully and intentionally damaging Defendant in amounts unknown by Defendants at this time.

54. Defendants request a determination by this Court that USIC has acted fraudulently, and that Defendants have sustained damages as herein alleged as a result thereof.

55. WHEREFORE, Defendants pray for judgment as set forth below.

## COUNT IV: UNJUST ENRICHMENT

56. Defendants reallege and incorporate herein by reference the allegations set forth above.

57. During the 12 month period following the closing of the APA, USIC has effectuated multiple discounts and reduced pricing, as well as failed to enforce several contractual price increases affecting customers of the Business. These acts had the overall effect of reducing the 12 month revenue of the Business. USIC actions, resulting in the reduction the 12 month revenue of the Business.  Said acts were detrimental to Defendants, but beneficial to USIC in terms of improving customer relations and satisfaction.

58.  USIC's retention of long term benefits with One Call's former clients, at Defendants' ultimate expense, violates the fundamental principles of justice, equity and good conscience, and unjustly enriched USIC.

59. All conditions precedent to Defendants' causes of action have been performed, have occurred, or have been excused.

60. Defendants request a determination by this court that USIC has been unjustly enriched by its actions related to Defendants and the APA, and that Defendants have sustained damages as herein alleged.

      WHEREFORE, Defendants pray for judgment as set forth below

## **PRAYER FOR RELIEF**

Defendants pray for the following relief:

A. An Order on declaratory judgment that Defendants are entitled to be paid the Deferred Amount under the APA, that no monies are due to USIC and that USIC is not entitled to a determination of attorneys' fees.

B. An Order adjudging that USIC has breached the APA.

C. An Order adjudicating that USIC has committed fraud in regards to its actions related to the APA and the determination of the final 12 month revenue of the Business.

D. An Order adjudicating that USIC has been unjustly enriched by its actions related to the customers of the Business.

E. An Order that Defendants are entitled to recover contractual damages in the sum of the Deferred Amount ($1,750,000 plus interest since September 30, 2011), consequential damages (approximately $30,000), and attorneys' fees, in an amount to be determined by the Court.

F. An Order that Defendants are entitled to punitive damages and attorneys' fees.

G. An Oder that Defendants have such other, further, and different relief as the court deems proper under the circumstances.

Dated:  January 16, 2012                              Respectfully Submitted,

                                                      JANSSEN DOYLE, LLP


                                                      By:   */s/ Jaime b. Herren*
                                                           Jaime B. Herren *(pro hac vice)*
                                                           Danford R. Due, Atty. No. 4618-49
                                                           Scott E. Andres, Atty. No. 25261-49

                                                           *Attorneys for Defendants,*
                                                           *One Call Locators, Ltd d/b/a Elm Locating &*
                                                           *Utility Services and Lee C. Graves*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing was filed electronically on the 16th day of January 2012, and that foregoing has been served or will be served upon the following counsel of record in this matter by operation of the Court's electronic filing system:

Michael A. Wukmer  
Christina L. Fugate  
ICE MILLER LLP

                                              By:   /s/ *Jaime B. Herren*  
                                                      Jaime B. Herren

JANSSEN DOYLE  
140 Brookwood Road, suite 102  
Orinda, CA 94563  
(925) 295-1800

DUE DOYLE FANNING, LLP  
55 Monument Circle, Suite 900  
Indianapolis, Indiana 46204  
(317) 635-7700